UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

JOHN SPRY,

Case No.:

Plaintiff,

**VERIFIED COMPLAINT**

-against-

THE CITY OF NEW YORK; MAYOR OF THE CITY OF NEW YORK ERIC ADAMS; DEPARTMENT OF CORRECTION COMMISSIONER LOUIS MOLINA; FIRE COMMISSIONER LAURA KAVANAGH; DEPARTMENT OF CORRECTION FIRE SAFETY DIRECTOR CHRISTOPHER CURRENTI; WARDEN OF THE ANNA M. KROSS CENTER JOHN OR JANE ROE; and NEW YORK CITY DEPARTMENT OF CORRECTION MEMBERS JOHN and JANE DOE #1-20;

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Defendants.

--------------------------------------------------------------------------------X

Plaintiff, JOHN SPRY, by his attorney MARYANNE K. KAISHIAN, an attorney with KAISHIAN & MORTAZAVI LLC and duly admitted to practice before the Courts of the Southern District of New York, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff John Spry ("Plaintiff" or "Mr. Spry") was at all relevant times detained by the Defendant City of New York, specifically in the custody of the New York City Department of Correction (DOC), while awaiting trial and presumed innocent. Prior to Mr. Spry's injuries, Defendants routinely failed to abide by basic fire safety laws and regulations to protect the individuals in Defendants' custody for multiple years despite the persistent hazard of fires and countless fire-related injuries across Rikers Island and in New York City jails. On June 11, 2022, Defendants abandoned Mr. Spry and others in his unit on Rikers Island to languish in a fire and refused to provide him with necessary medical care in its aftermath. Mr. Spry has suffered greatly

1

due to Defendants' recklessness, negligence, deliberate indifference, and various violations of his constitutional rights.

2.      Mr. Spry now brings the instant Complaint before this Court.

## PARTIES

3.      At all times mentioned herein, Plaintiff John Spry was a resident of New York County and was detained pretrial by the Defendant City of New York.

4.      At all times mentioned herein, Mr. Spry was detained pretrial in the custody of the Defendant City of New York and its Department of Correction on Rikers Island, an area with jail facilities administered by the Defendant City and its Department of Correction in Bronx County.

5.      At all relevant times mentioned herein, Defendant City of New York ("Defendant City" or "New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Department of Correction ("DOC"), and their employees.

6.      Defendant New York City Mayor ERIC ADAMS ("Defendant Adams") was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any DOC employees and agents, including the NYC DOC Commissioner, and to appoint and/or remove the NYC Fire Commissioner. He is sued individually and in his official capacity.

7.      Defendant DOC Commissioner LOUIS MOLINA ("Defendant Molina") was at all times relevant to this Complaint the Commissioner for the NYC Department of Correction. As DOC Commissioner, Defendant Molina, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial

2

policies and procedures, including policies and procedures as to personnel hiring, training, supervision, building maintenance, and discipline with respect to DOC staff members' performance of their duties. New York City Charter § 623. As Commissioner, Defendant Molina is responsible for staffing determinations, including filing vacant positions and enforcing policies against staff absenteeism. Defendant Molina constituted a City policymaker and an agent and/or employee for whom the City is liable. He sued individually and in his official capacity.

8.     Defendant New York City FIRE COMMISSIONER LAURA KAVANAGH ("Defendant Kavanagh") was at all times relevant to this Complaint the New York City Fire Commissioner. Under New York City law, the Fire Commissioner "shall be responsible for the administration and enforcement of the fire code." NYC Admin. Code § 29-104.1 ("The commissioner shall be responsible for the administration, interpretation and enforcement of this code."). Under NYC Admin. Code § 29-104.12, Defendant Kavanagh had the authority to compel the Department of Correction's compliance with applicable fire codes and standards ("Upon request of the commissioner, it shall be the duty of all departments to cooperate with the department at all times and to furnish the department with such information, reports and assistance as the commissioner may require.") At all relevant times, Defendant Kavanagh constituted a City policymaker and an agent and/or employee for whom the City is liable. She is sued individually and in her official capacity.

9.     Defendant DOC Fire Safety Coordinator Christopher Currenti ("Defendant Currenti") was at all times relevant to this Complaint the Fire Safety Coordinator for the NYC Department of Correction. As Fire Safety Coordinator, Defendant Currenti was responsible for the training and education of DOC staff on fire safety, the implementation of fire safety policies in accordance with applicable law and best practices, notifying policymakers of deficient fire safety equipment, procedures, and practices, and generating records and reports regarding fire safety

3

equipment and testing. At all relevant times, Defendant Currenti constituted a City policymaker and an agent and/or employee for whom the City is liable. He is sued individually and in his official capacity.

10.     Defendant Warden for the Anna M. Kross Center (AMKC) JOHN or JANE ROE ("Defendant Roe") was at all times relevant to this Complaint the Warden for AMKC. Defendant Roe's true identity is not yet known. As Warden for AMKC, Defendant Roe was the Chief Administrative Officer for AMKC and was responsible for requesting "the appropriate authority having code enforcement jurisdiction to conduct an annual fire and safety inspection" of the facility, correcting any deficiencies identified therein, and compiling reports of fire inspections and repairs in accordance with 9 New York Comp. Codes R. and Regs. § 7039.4. Defendant Roe was further responsible for implementing and enforcing administrative and managerial policies and procedures, including DOC policies, Board of Correction (BOC) standards, and applicable laws and regulations. At all relevant times, Defendant Roe constituted a City policymaker for whom the City is liable. Defendant Roe is sued individually and in their official capacity.

11.     The true names and identities of the DOC Member Defendants John or Jane Doe #1-10 are currently unknown to Plaintiff. They are referred to herein collectively as "Defendant DOC Does." At all times hereinafter mentioned, these Defendant DOC Does were employed by the City of New York as members of the DOC.

12.     At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

13.     Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

14.     The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

15.     All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

16.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

17.     Each individual Defendant is sued in her or his individual and official capacities.

18.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the DOC take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow Defendants.

19.     Each individual Defendant is sued in her or his individual and official capacities.

**JURISDICTION, VENUE, and GML COMPLIANCE**

20.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

21.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Southern District of New York, where Plaintiff and Defendant City reside and where a majority of the actions complained of herein occurred.

22.     Plaintiff timely served Notices of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under New York State law.

23.     Mr. Spry was examined by the Defendant City of New York pursuant to GML §50-H on February 16, 2023.

24.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

25.     This action was initiated within one year and ninety days of the accrual of all Plaintiff's claims pursuant to New York State Law.

## BACKGROUND

### *The Condition of New York City's Jails*

26.     Defendant City of New York has long been on notice that the conditions in its jails amount to constitutional violations of its civilians' rights. Indeed, the Southern District of New York is currently considering whether to hold Defendant City and the DOC in contempt for its continued failure to abide by basic standards of confinement as requested by Plaintiffs and recommended by the Federal Monitor in *Nuñez et al. v City of New York*, 11-CV-5843 (LS/THK) (S.D.N.Y.).

27.     The City of New York and the DOC have conceded that the conditions on Rikers Island constitute a constitutional violation for the people detained there.[1] The City is facing

---

[1] *See Nuñez et al. v City of New York* 11-CV-5843 (LS/THK) (S.D.N.Y.), Nov. 17, 2022, Hearing, Tr. 21:10-17.

numerous civil rights lawsuits for injuries, assaults, deprivations, and violations resulting from the DOC's conduct and treatment of detained people.

### *Fires in New York City Jails*

28.     Specifically, Defendants City, Adams, Molina, Currenti, Warden Roe, and DOC Does are well-aware that fires posed a specific safety threat to the people incarcerated in their custody, including Plaintiff.

29.     Defendants are well-aware of the yearslong, active, and ongoing litigation in *Benjamin et al. v City of New York et al.* (75 Civ. 3073 [LAP]). The *Benjamin* litigation is centered upon Defendant City's maintenance of environmental conditions and substandard conditions of confinement at Rikers Island.

30.     The *Benjamin* Plaintiffs have repeatedly raised the issue of frequent fires injuring people in Defendants' custody and the lack of functional fire safety devices, rapid response, and fire safety protocols in effect in the Defendants' jails.

31.     Indeed, the *Benjamin* Monitor's July 5, 2023, Report on Environmental Conditions details the impact of numerous fires across Rikers Island and in New York City jails and the lack of adequate preparation, fire suppression systems, and responses by Defendants.

32.     This report includes information about a fire that took place on April 6, 2023, in the solitary confinement tier of the North Infirmary Command on Rikers Island. Much as in Plaintiff's experience, fire began in one individual's cell and burned uncontrolled while DOC staff were absent from their posts and fire safety systems failed. The sprinkler system did not activate, and no help came for the men on the tier for approximately half an hour. Multiple people were seriously injured.

33.     On August 14, 2023, reporting by Graham Rayman in THE NEW YORK DAILY NEWS revealed that representatives for the Defendant City's DOC "realized they could not say how long

the unit's sprinklers were out of service" when questioned in the wake of the fire.[2] It had been at least one year since an inspection had taken place.[3]

34.    Defendants are required to conduct, at minimum, monthly inspection and reporting of fire extinguishing system functionality with additional, increasingly comprehensive semiannual and annual inspections and reporting thereof. *See* NYC Build. Code § 904.5.1.

35.    This failure was further evinced through subsequent disclosures and the lack of responsive records from Defendants demonstrating otherwise.

36.    For example, in a July 27, 2023, internal memorandum, the DOC admitted that it was "unable to locate the weekly Fire Safety reports ranging in dates from April 1, 2022, through April 30, 2023" and "unable to produce the requested monthly fire safety reports from April 1, 2022, through April 30, 2023."

37.    Medical neglect and deliberate indifference to medical care in the aftermath of injuries such as Plaintiff's are also ubiquitous in Defendant City's jails. Data shows that the DOC remains in contempt of court for continually failing to produce detained people to their medical appointments in accordance with this Court's December 3, 2021, Order in *Matter of Agnew v NY City Dept. of Corr.* (No. 813431/2021E (Sup. Ct., Bronx County)), one of the Department's most basic required functions. *See Agnew* Petitioners' December 19, 2022, Memorandum of Law and Motion for Contempt (Dkt. 178).

38.    These issues predate and post-date Mr. Spry's injuries, establishing both that Defendants were long on notice of this the specific threat fires pose to people in custody and

---

[2] Graham Rayman, *NYC Correction Department skipped weekly fire safety checks at Rikers Island jail before near-deadly blaze (Exclusive)*, The New York Daily News, August 14, 2023 *available at* https://www.nydailynews.com/2023/08/14/nyc-correction-department-skipped-weekly-fire-safety-checks-at-rikers-island-jail-before-near-deadly-blaze-exclusive/.
[3] *Id*.

Defendants' continued failure to safeguard the lives and wellbeing of people in custody in accordance with applicable rules, laws, and constitutional standards.

### *Fire Safety Regulations*

39.     In the City and State of New York, laws and regulations specifically govern fire safety standards, device maintenance and testing protocols, and emergency procedures for institutions where people are incarcerated. These laws, rules, and regulations are outlined below and discussed in further detail under the Eighth Cause of Action, *infra*.

40.     New York State law mandates routine testing of fire safety systems and the reporting of results. *See* New York Comp. Codes R. & Regs. Title 19 § 1204.12; *see* 9 New York Comp. Codes Rules and Regs. § 7039.4.

41.     NYC Admin. Code Title 28, Ch. 9 (NYC Building Code) classifies buildings housing incarcerated people under Institutional Group I-3 Settings and imposes regulations according to this classification. *See* NYC Admin. Code §28-901.5.1. People incarcerated in the Defendant City's custody are classified under Group I-3 because they have been rendered "generally incapable of self-preservation due to security measures not under the occupants' control." NYC Admin. Code §28-308.5.

42.     Individuals in Group I-3 settings, such as Plaintiff, are owed a special duty of care by the Defendants while incarcerated and detained within the City's custody and control.

43.     Among other things, the NYC Building Code requires, *inter alia*, that Group I-3 settings are provided with fire protection systems in "good working order" (§28-901.6.2) including sprinkler systems with proper installation and/or maintenance and/or testing and/or inspections and/or repairs (§28-903.2.6, §28-904.5.1).

44.     New York City Admin. Code Title 29, Ch. 2 (NYC Fire Code) requires, *inter alia*, the maintenance and/or continual maintenance and/or inspection and/or testing and/or repair and/or

restoration of defective fire protection systems and signage and establishes Group I-3 Emergency Preparedness standards that forbid insufficient staffing, failure to evacuate, failure to protect, and failure to ensure emergency preparedness — all factors introduced by Defendants and contributing to Plaintiffs' injuries.

45.     The Defendants have failed to abide by any and all applicable rules, laws, and regulations regarding fire safety, and have directly caused Plaintiff's injuries as a result of these failures in addition to Defendants' inaction at the time of the June 11, 2022, fire and in its aftermath.

46.     Defendants have failed to adequately test, maintain, repair, or install the required fire safety equipment and to audit fire safety procedures and testing by Defendant City and DOC. Defendants have failed to train the Defendant City's agents and/or employees on fire safety procedures and further failed to discipline agents and/or employees for failure to follow applicable rules and regulations.

47.     All Defendants—the City, the Mayor, the Commissioner, the Fire Safety Director, Warden Roe and individual DOC staff—were aware that fires posed an ongoing and serious risk to the lives and wellbeing of people who are incarcerated in New York City's jails.

48.     Mr. Spry was injured in a foreseeable and egregious way as a direct result of Defendants' failures and constitutionally deficient conduct.

## STATEMENT OF FACTS

49.     On June 11, 2022, Mr. Spry was in his cell in AMKC on Rikers Island at approximately 1:00 PM when a fire broke out in his unit. Mr. Spry saw the fire and smelled smoke.

50.     Mr. Spry and other people in his unit began to yell for help.

51.     No help came. Defendant Does # 1 - 2 were absent from their posts.

52.     Prior to the start of the fire, DOC Does # 3 - 4 had impermissibly locked Mr. Spry inside of his cell for an extended lock-in of greater than 17 hours in violation of New York State's HALT Solitary Act. Mr. Spry is not eligible for exceptions to the HALT Solitary prohibitions against long-term solitary confinement.

53.     Mr. Spry had nowhere to go and no way to access breathable air.

54.     Mr. Spry laid himself flat on the ground to attempt to access breathable air. Mr. Spry suffers from asthma and struggled to breathe.

55.     The smoke triggered an asthma attack.

56.     Mr. Spry continued to call for help to the best of his ability.

57.     However, DOC staff allowed the fire to burn uncontrolled for approximately two hours while Mr. Spry struggled to breathe and continued to inhale smoke.

58.     DOC Does #1 – 10 did not put out the fire or attempt to move Mr. Spry away from the fire during this period.

59.     No fire safety or suppression systems were activated.

60.     After approximately two hours of inhaling smoke consisting of unknown substances, at approximately 3:00 PM, Mr. Spry was removed from the unit.

61.     Mr. Spry was experiencing pain and struggling to breathe. He immediately and repeatedly requested essential medical care. DOC Does #1 – 20 denied and/or delayed Mr. Spry's medical care.

62.     DOC Does # 6-8 informed Mr. Spry that he needed to wait to see a doctor.

63.     Mr. Spry waited for approximately twelve (12) hours, until approximately 3:00 AM on June 12, 2022, at which time DOC Does # 8 – 10 informed him that no doctors or medical staff would be seeing him or the other incarcerated people who had been exposed to the smoke and fire, and that he needed to return to his cell to be locked in.

64.     Throughout this period and in the following days, Mr. Spry had black mucous coming from his nose and his lungs when he coughed. Defendant Does denied him medical care.

65.     On the morning of June 12, Mr. Spry again requested medical attention, as his nose, throat, and chest were in pain from smoke inhalation and he continued to have difficulty breathing.

66.     This request was also denied by DOC Does # 10 – 12.

67.     Mr. Spry requested medical care again on or about June 13 and again on or about June 14, at which time he was continuing to experience pain and difficulty breathing, and his body was still expelling soot and black mucous. He was denied medical care by DOC Does # 12 – 20.

68.     Mr. Spry continued to request medical care in the aftermath of the fire. These requests were likewise denied.

69.     Mr. Spry continued to expel black mucous and phlegm from his body for several days. Mr. Spry experienced pain and burning in his nose, chest, and throat and difficulty breathing for approximately two weeks, but was continually denied medical care by Defendants.

70.     Defendants' conduct caused Mr. Spry to fear for his life. He was unable to breathe. He suffered from carbon monoxide poisoning and the effects of smoke inhalation.

71.     The fire and Mr. Spry's prolonged, hours-long exposure to smoke triggered Mr. Spry's asthma and resulted in an asthma attack for which Defendants denied his medication, including the use of his inhaler, resulting in a life-threatening medical event.

72.     Mr. Spry suffers from ongoing and worsened difficulty breathing, reduced physical abilities, difficulty sleeping, post-traumatic stress, and severe anxiety. The full extent of his injuries is not yet known.

73.     Defendants denied and/or delayed Mr. Spry's medical care over the course of many days, denying him essential care and exacerbating his injuries.

74.     Mr. Spry now brings the instant case before this Court.

## FIRST CLAIM FOR RELIEF

### Deliberate Indifference to Medical Care

*Against Defendants Adams, Molina, Roe, and DOC Does Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution*

75.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

76.     Defendants were obligated to provide Plaintiff, who was incarcerated in Defendant City's custody, with medical care and failed to do so.

77.     Plaintiff suffered a serious medical condition with which he was formally diagnosed and about which Defendant City and its agents had actual knowledge.

78.     The incidents that occurred while Plaintiff was in Defendants' custody caused serious injuries to Plaintiff and exacerbated an existing, serious underlying condition, namely Plaintiff's asthma. Plaintiff repeatedly requested medical care and attention, and Defendants refused to provide it to him.

79.     An objectively reasonable person in Defendants' position would have known, or should have known, that Defendants' actions or omissions in failing to provide Plaintiff with medical care posed an excessive risk of harm.

80.     Any reasonable doctor or patient would have perceived the medical need in question—treatment for an asthma attack, smoke inhalation, and other injuries suffered by Plaintiff—as important and worthy of comment or treatment.

81.     Plaintiff's medical condition significantly affects his daily activities and Defendants' deliberate indifference to his medical care has caused Plaintiff significant pain and suffering.

82.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**<u>SECOND CLAIM FOR RELIEF</u>**

**Conditions of Confinement**

***Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourteenth Amendment to the United States Constitution and the Due Process Clause Thereunder***

83.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

84.     At the time of the incidents giving rise to this complaint, Plaintiff was detained pretrial in the Defendant City's custody and control.

85.     As a person incarcerated by Defendant City, Plaintiff was subject to the conditions created, imposed, maintained, fostered, and/or permitted by Defendants.

86.     These conditions, either alone or in combination, posed a risk of serious damage to Plaintiff's health, including risks to Plaintiff's physical and/or mental soundness.

87.     Defendants acted intentionally to impose the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to Plaintiff even though the Defendants knew, or should have known, that the conditions to which they subjected Plaintiff posed an excessive risk to Plaintiff's health or safety.

88.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

89.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRD CLAIM FOR RELIEF

**Violations of Plaintiff's Due Process Rights**

***Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution***

90.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

91.     Defendants City, Defendant Adams, Defendant Molina, Defendant Kavanagh, Defendant Currenti, and Defendant Roe designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in the violations of his Due Process rights described elsewhere herein.

92.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of his rights without due process of law.

93.     Defendants' conduct—including leaving Plaintiff in solitary confinement during a fire with either full knowledge or cause to know that the unit lacked functional fire safety systems—is so appalling, harmful, and unconstitutional as to shock the conscience.

94.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

95.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability**

***Against Defendants City, Adams, Molina, Kavanagh, Currenti and Roe Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants'***

***Violations of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution***

96.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

97.     Policymaker Defendants Adams and Molina were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

98.     The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to:

   a.   Failing to provide functional fire prevention or suppression systems in City jails;

   b.   Failing to conduct inspections and/or tests of the same in accordance with applicable law;

   c.   Routine use of impermissible solitary confinement and/or punitive segregation, including through the implementation of overly broad and lengthy institutional lockdowns;

   d.   Failing to enforce the implementation of fire suppression system installation, testing, or maintenance by the Department of Correction in the face of clear evidence that the Department had abdicated its duties;

   e.   Failing to respond to fires in DOC facilities for significant periods of time, if at all;

   f.   Failing to adequately staff and fill DOC positions intended to promote fire safety;

   g.   Failing to train DOC members on fire and medical emergency responses;

h.  Inaccurate or wholly absent internal recordkeeping and public reporting related to DOC staffing, absenteeism, fire safety protocols and inspections, injuries, and incidents related to fires in New York City jails; and

i.  Failing to ensure timely and necessary medical care, including access to essential medications, for people in custody.

99.    All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

a.  Formal policies, rules, and procedures of Defendant City;

b.  Actions and decisions by Defendant City's policymaking agents including, but not limited to, Defendants Adams, Molina, Kavanagh, Currenti, and Roe;

c.  Customs, practices, and usage of the DOC that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendants City, Adams, Molina, Kavanagh, Currenti, Roe, and other policymaking officials;

d.  Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline DOC officers, despite full knowledge of the officers' wrongful acts, as described herein.

### FIFTH CLAIM FOR RELIEF

**Failure to Train and/or Supervise**

***Against Defendants City, Adams, Molina, Kavanagh, Currenti and Roe Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)***

100.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.    Defendant City and its agents Defendants Adams, Molina, Currenti, and Warden Roe failed to train and/or supervise the Defendant DOC Members.

102.    All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Plaintiff's injuries.

103.    Defendants knew or should have known that Defendant DOC Members were likely to violate the constitutional rights of individuals in their custody, and that this likelihood was heightened by lack of action by Defendants with enforcement power over relevant customs, practices, policies, rules, and regulations.

104.    Defendants know that DOC Members are certain to regularly encounter situations such as those described herein—including the occurrence of a fire on Rikers Island and/or in a New York City jail facility and encountering a person requiring medical care while in custody—through the course of their employment.

105.    Defendants knew that there is a history of wrongful conduct in these scenarios by DOC Members.

106.    Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations and physical and emotional injuries.

107.    Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

108.    By failing to train and supervise Defendant DOC Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by DOC members' conduct absent adequate training and supervision.

109.    These failures caused the harms suffered by Plaintiff.

## SIXTH CLAIM FOR RELIEF

### Negligent Screening, Hiring, and Retention

***Against Defendants City, Adams, Molina, Kavanagh, and Currenti Pursuant to 42 U.S.C. § 1983 and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978)***

110.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

111.    All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Plaintiff's injuries.

112.    Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm and/or the likelihood of future harm should their conduct continue.

113.    Rather than removing, disciplining, or training agents and/or employees who have engaged in dangerous behavior—including failing to evacuate detained people from fires, failing to respond to emergencies, failing provide basic medical care to vulnerable individuals, and failing to conduct basic fire safety inspections and trainings in City jails—Defendants have continued to employ and empower such agents and/or employees to continue inflicting predictable harm on individuals they interact with, including Plaintiff.

114.    Such harm is so foreseeable to elevate Defendants' conduct to the level of deliberate indifference.

## SEVENTH CLAIM FOR RELIEF

### Breach of Duty to Protect

#### *Against All Defendants Pursuant to 42 U.S.C. § 1983*

115.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.    The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

117.    Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

118.    Defendants failed to abide by and/or enforce the requirements of all applicable standards, rules, and regulations—including conditions of confinement standards, fire safety codes, and requirements to provide incarcerated people with medical care—with full knowledge that such failures would lead to the harms suffered by Plaintiff.

119.    Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## EIGHTH CLAIM FOR RELIEF

### Violations of New York State and/or New York City Law

#### *Pursuant to the New York State Constitution and New York State Common Law*

120.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

#### *Respondeat Superior*

121.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or

while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

### New York State Civil Rights Law Article 3 § 28 (N.Y. Civ. § 28)

122.    At the time of the incident giving rise to the instant Complaint, Plaintiff was in the custody of Defendants, who are each a "police officer, peace officer or other law enforcement representative or entity" within the meaning of the New York State Civil Rights Law. As such, Defendants had a duty to provide assistance and treatment for Plaintiff's medical needs.

123.    Defendants abdicated their duties under this statute and failed to provide medical care to Plaintiff. Such denial and/or delay was unreasonable and caused delay in Plaintiff's treatment for a serious injury.

124.    This failure resulted in serious injury and/or the exacerbation of Plaintiff's injuries for which Defendants are liable.

### Violations of the New York State Constitution

125.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 5 and 11 of the New York State Constitution.

126.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 5 and 11 of the New York State Constitution and appropriate to ensure full realizations of Plaintiff's rights under those sections.

### Premises Liability / Maintenance of a Dangerous Condition

127.    At all times herein mentioned, the Defendant City and its agents, servants, representatives, officers, and employees, operated, maintained, controlled, repaired, designed, managed and supervised the jails and facilities on Rikers Island, located at or near 16-16 Hazen

St., East Elmhurst, New York, including all cells, common areas, and dormitories and the fire safety equipment, alarms, and sprinklers therein.

128.   Defendants had a duty to maintain these premises in a reasonably safe and proper condition, including in compliance with applicable fire safety and occupancy standards.

129.   Defendants created, caused, contributed to and had actual knowledge and notice of dangerous conditions within the premises where Plaintiff was incarcerated in Defendant City's custody, and knew or should have known that these dangerous conditions existed. These conditions were present for a significant period of time prior to Defendant's injury such that Defendants' full, actual knowledge of these conditions and the dangers they posed to Plaintiff cannot be reasonably disputed.

130.   As a result of Defendants' negligence and failure to maintain a safe premises in the areas where Defendant City and its agents-maintained custody and control of Plaintiff, Defendants caused the harms an injuries suffered by Plaintiff.

### Humane Alternatives to Long-Term (HALT) Solitary Confinement Act and NY Corr. Law § 137

131.   In March 2021, the Humane Alternatives to Long-Term (HALT) Solitary Confinement Act went into effect in New York State. Among other changes to New York State's Correctional Law (NY Corr. Law) § 137, the amendments under the HALT Act prohibited the imposition of segregated confinement, defined generally as greater than seventeen (17) hours of cell confinement a day, upon members of a "special population."

132.   At the time of the violations by Defendants described herein, Plaintiff was a member of a "special population" under New York State Correction Law ("NY Cor. Law") § 2 because he has a disability as defined by the New York State Executive Law Ch. 18, Art. 15 § 292(21).

133.    This confinement was not imposed due to a facility-wide emergency nor was it for the purpose of providing Plaintiff with medical or mental health care. No exceptions to Plaintiff's protection from segregated confinement under the <u>NY Corr. Law</u> applied to Defendants' conduct.

134.    Defendants knowingly, willfully, and/or recklessly imposed an extended period of segregated confinement against Plaintiff.

135.    Plaintiff is one of the class for whose particular benefit the statute was enacted. Recognition of a private right of action under this section promotes the legislative purpose, is consistent with the legislative scheme, and is necessary to ensure enforcement.

136.    A damages remedy here is necessary to effectuate the purposes of the New York State Correction Law, including its amendments via the HALT Solitary Confinement Act.

### Intentional and Negligent Infliction of Emotional Distress

137.    Through the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

138.    The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

139.    As a result of the foregoing, Plaintiff was deprived of his constitutional rights, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### Negligent Training, Retention, Hiring and Supervision

140.    Upon information and belief, Defendant City supervised and trained the officials described above and did so in a negligent manner resulting in the harms described.

141.    Defendants owed a special duty of care to Plaintiff, an incarcerated person in the custody of the Defendant City.

142.    At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that the individual Defendants had a propensity for the conduct causing Plaintiff's injuries.

### Negligent Hiring of Contractors

143.    Defendant City and Policymaker Defendants engaged in negligent hiring of contractors hired to maintain, repair, inspect, and/or design the fire safety systems at the jail facilities on Rikers Island in which Plaintiff was detained at the time of the incident, including sprinklers, smoke detectors, fire extinguishers, and fire alarms therein.

144.    Defendants owed a special duty of care to Plaintiff, an incarcerated person in the custody of the Defendant City. At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City.

145.    Defendant City and its agents and/or employees failed to hire contractors who were qualified to install and/or maintain and/or test the fire safety and suppression systems required to ensure Plaintiff's safety as a person in Defendant City's custody, and undertook this failure knowing that such negligence carried a foreseeable risk of harm to Plaintiff. Plaintiff was in fact harmed and injured by Defendants' conduct.

146.    Defendant Roe failed to engage "the appropriate authority having code enforcement jurisdiction to conduct an annual fire and safety inspection" of the facility, failed to correct any deficiencies identified therein, and failed to compile reports of fire inspections and repairs in violation of 9 New York Comp. Codes R. and Regs. § 7039.4.

147.    Defendant Molina failed to adequately staff positions within the Department of Correction required to ensure fire safety and failed to hire and/or demand or require the

engagement of contractors to address known or readily apparent deficiencies in fire safety protocols, procedures, and/or fire suppression systems in New York City's jails.

148.    As a result of this negligence, Plaintiff suffered the harms and injuries described herein.

149.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**Negligence**

150.    Defendants owed a special duty to Plaintiff and breached this duty through their conduct described herein. Defendants' negligence in fulfilling their duty to Plaintiff resulted in Plaintiff's injuries.

**New York State Rules and Regulations Violations**

151.    All individual Defendants are agents and/or employees of the municipal Defendant New York City and are subject to New York State rules and regulations. At all times relevant herein, the individual Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendants knew or should have known that failure to adhere to the requirements set forth by the New York Comp. Codes, Rules, and Regulations could result in the same harms suffered by Plaintiff.

152.    Defendant Roe failed to engage "the appropriate authority having code enforcement jurisdiction to conduct an annual fire and safety inspection" of the facility, failed to correct any deficiencies identified therein, and failed to compile reports of fire inspections and repairs in violation of 9 New York Comp. Codes R. and Regs. § 7039.4.

153.    No Municipal or Policymaker Defendants oversaw, enforced, implemented discipline related to, or otherwise ensured Defendant Roe's compliance with this duty.

154.    These failures caused the harms and injuries suffered by Plaintiff.

155.     Plaintiff is one of the class for whose particular benefit the statute was enacted. Recognition of a private right of action under this section promotes the legislative purpose, is consistent with the legislative scheme, and is necessary to ensure enforcement.

156.     Defendants have been on notice of these violations and have failed to remedy these violations. A damages remedy here is necessary to effectuate the purposes of the New York State Codes, Rules, and Regulations.

## New York City Administrative Code Violations

157.     All Defendants are subject to the regulations of the New York City Administrative Code (NYC Admin. Code). At all times relevant herein, the individual Defendants were employed by, and acting in the scope of their employment with, the municipal Defendant New York City. Defendants knew or should have known that failure to adhere to and/or enforce the requirements set forth by the NYC Admin. Code, including Title 28, Ch. 7, Article 701 (NYC Building Code) and Title 29, Ch. 2 (NYC Fire Code) was likely to result in the harms suffered by Plaintiff. Plaintiff was in fact harmed and injured by Defendants' conduct.

### *Building Code Violations*

158.     New York City has adopted the National Fire Prevention Association's standards in its implementation of the provisions of the NYC Admin. Code, including its Building Code. Accordingly, Defendants were required by New York City Law to conduct and/or oversee and/or enforce monthly, quarterly, and annual fire inspections in New York City's jails, to issue reports related to these inspections, and to address any deficient conditions identified during these inspections. NYC Admin. Code § 28-904.5.

159.     Defendants failed to conduct these inspections, issue reports, or address deficient conditions.

160.    Defendants violated <u>NYC Building Code, Ch. 9</u> (Fire Protection Systems) by maintaining illegal occupancy in a Group I-3 setting. <u>NYC Admin. Code §28-901.5.1</u>.

161.    Defendants violated <u>§ 28-901.6</u> by failing to provide fire protection systems in "good working order."

162.    Defendants violated <u>§ 28-903.2.</u> by failing to properly install and/or maintain and/or test and/or inspect and/or repair a sprinkler system and by failing to enforce these rules.

163.    Defendants violated <u>§ 28-903.5</u> by failing to properly install and/or test and/or maintain and/or inspect and/or repair fire protection systems.

164.    Defendants violated <u>§ 28-904.5</u> by failing to inspect and/or test and/or maintain fire extinguishing systems.

165.    Defendants violated <u>§ 28-904.5.1</u> by failing to conduct and/or request the conduction of a monthly inspection of fire extinguishing systems.

166.    Defendants violated <u>§ 28-904.5.2</u> for failure to conduct a semiannual inspection of fire extinguishing systems.

### *NYC Fire Code Violations*

167.    Defendants violated the NYC Fire Code by failing to maintain and/or continuously maintain and/or inspect and/or test and/or repair and/or restore fire protection systems and signage. <u>NYC Admin. Code § 29-107</u>.

168.    Defendants violated the NYC's Fire Code Group I-3 Emergency Preparedness requirements by failing to ensure sufficient staffing, failing to evacuate during a fire, failure to protect people in custody during a fire, and failing to ensure emergency preparedness. <u>NYC Admin Code § 29-409.</u>

169.    Defendant Kavanagh failed to perform the duties assigned to her under NYC Admin. Code § 29-104.1 ("The commissioner shall be responsible for the administration, interpretation and enforcement of this code.").

170.    Plaintiff is one of the class for whose particular benefit these provisions of the NYC Admin. Code, including the sections constituting the NYC Fire Code and the NYC Building Code and the protections conferred thereunder to people in a Group I-3 setting, were enacted. Recognition of a private right of action under these sections promotes the legislative purpose, is consistent with the legislative scheme, and is necessary to ensure enforcement.

171.    Defendants have been on notice of the violations described herein and have continually failed to remedy these violations in a manner consistent with their duties and obligations. A damages remedy here is necessary to effectuate the purposes of the New York City Administrative Code, including the NYC Fire Code and NYC Building Code.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i.      Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.     Actual damages in an amount to be determined at trial against the City of New York;

iii.    Policy change;

iv.     Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. § 1988, the New York State

Civil Rights Law, the New York City Administrative Code, and

New York State common law; and

v.  Such other relief as the Court deems just and proper.

Dated: New York, New York
       September 9, 2023

KAISHIAN & MORTAZAVI LLC

By: _____

MARYANNE K. KAISHIAN
**KAISHIAN & MORTAZAVI LLC**
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: mk@kaishianlaw.com

## **ATTORNEY VERIFICATION**

I, MARYANNE K. KAISHIAN, an attorney duly admitted to practice before the Southern District of New York, affirm the following to be true under the penalties of perjury:

1.     I am the attorney of record for the Plaintiff.

2.     I have read the annexed Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.  My beliefs, as to those matters therein not stated upon knowledge, are based upon facts, records, other pertinent information contained in my files.

3.     I make this verification because Plaintiff does not reside in the County (Kings) where I maintain my office.

Dated:  Brooklyn, New York
         September 9, 2023

By: _____
Maryanne K. Kaishian, Esq.
**Kaishian & Mortazavi LLC**
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: mk@kaishianlaw.com